[No. 35905.   En Banc.   August 9, 1962.]

JAMES M. ADAMSON, *as Guardian ad Litem, Appellant,* v. JOE W. TRAYLOR *et al., Respondents.**

*Reported in 373 P. (2d) 961.

*Horton & Wilkins*, for appellant.

*Gavin, Robinson & Kendrick* and *Robert R. Redman*, for respondents.

HUNTER, J.—This appeal results from a personal injury action, in which a judgment was entered for the defendants upon a jury verdict in their favor.

The nominal plaintiff (appellant), James M. Adamson, brought the action as guardian ad litem of his son, Kevin Adamson, the injured minor. The defendants (respondents) are Joseph Traylor and his wife, but for convenience, we will refer to Joseph Traylor as the single defendant.

The accident which gave rise to this action occurred at Long Lake in Grant County, Washington, the early morning of June 28, 1959. Mr. Adamson, his two sons, Kevin and Brooks, and a friend were at the lake for the purpose of fishing. At the time of the accident, Kevin, the 8-year-old minor, was asleep in a bedroll which lay on the ground in the camping area close to the lake. The bedroll consisted of blankets and a canvas exterior of olive drab color and was situated near a private roadway used by campers to drive into the camping and boat launching area next to the lake. Drivers coming into the area sometimes circled their vehicles off the roadway several feet and there were visible

tire ruts in the ground near the roadway. At its nearest point, the bedroll was 18 inches from some tire ruts extending out from the roadway.

It was approximately 4:45 a. m., after sunrise, when the defendant drove into the area accompanied by two other persons in his car. While driving his vehicle off the roadway into the grassy area, so as to maneuver it closer to the boat launching area, the front left wheel of the defendant's vehicle ran over the corner of the bedroll and struck the head of Kevin Adamson, causing him injuries. The defendant admits that he saw the object, which was the bedroll, as he drove into the grassy area, but he testified that at no time, until after the accident, did he recognize the object as a bedroll. He stated that previously he had been in the area on fishing trips and assumed that the object was a piece of cloth debris such as he had seen there before.

At the close of the evidence, the trial court submitted to the jury the issues of negligence of the defendant and contributory negligence of the minor Kevin Adamson. The jury returned a verdict in favor of the defendant. The plaintiff, as guardian ad litem has appealed.

The plaintiff's first contention raised by his assignments of error is that the trial court permitted the defendant to amend his answer two days before trial, raising the issue of the contributory negligence of the minor's father. The plaintiff excepted to the amendment prior to trial and at the beginning of the case again brought the court's attention to his exception taken to the defendant's amendment. At the conclusion of all evidence at the trial, the defendant conceded he was in error and that the issue of contributory negligence of the father should be taken from the jury.

█ This is not a case in which an issue is taken from a jury at the conclusion of the evidence by reason of insufficient evidence to support that issue, but is one in which the issue should not have been tried in the first instance, irrespective of the evidence, for the reason that the father in his individual capacity was not a party to the action and, as a matter of law, his negligence could not be imputed to

his minor 8-year-old son. *Gregg v. King Cy.*, 80 Wash. 196, 141 Pac. 340 (1914).

■ It was too late at the close of the evidence to instruct the jury to disregard the issue of the father's negligence after his responsibility for causing the accident had been injected into the case during the entire course of the trial. The plaintiff was denied a fair trial in being required to try the case with the continued presence before the jury of this improper and highly prejudicial issue to his cause. Moreover, the court did not successfully accomplish its intention to take this issue from the jury. The instruction given, relative to withdrawing the issue of the father's contributory negligence, is in the court's instruction No. 6, to which the plaintiff took appropriate exceptions:

"You are instructed that, under the law of the State of Washington, the primary duty of caring for Kevin Adamson, the minor plaintiff herein, at the time and place in question was that of his father, James M. Adamson.

"However, you are instructed that the negligence, if any, of the father cannot be imputed to the minor plaintiff in this case.

"You are further instructed that under the circumstances that the negligence of the father, if you so find, will not absolve the defendant from liability of any acts of negligence of the defendant."

This instruction does not adequately spell out that the contributory negligence of the father was not in the case and should not have been considered by the jury in determining the defendant's liability. To the contrary, it states the father has a paramount duty to care for the child, which, in view of the prior testimony, raised the inference that this was an issue for determination by the jury. This issue had no place in the case, and we cannot say that the instruction did not have the effect of confusing the jury in its consideration of the issue of contributory negligence.

■ The defendant argues that, admitting contributory negligence of the father was improper for the jury's consideration, instruction No. 6 was nevertheless a correct instruction on the theory that it was a question for the jury to

determine whether the negligence of the father was the sole proximate cause of the accident. Such an argument is wholly untenable. The issue before the jury was whether the defendant was negligent. If the jury found the defendant was negligent, the question of the father's negligence would have no bearing in the case, unless his negligence could be imputed to the minor to bar the minor's recovery, which was not permissible. Again, if the jury found the defendant was not negligent, then whether the father's negligence was the sole proximate cause of the accident would be immaterial in determining the defendant's liability.

The defendant argues, however, that the case of *Shay v. Parkhurst*, 38 Wn. (2d) 341, 229 P. (2d) 510 (1951), is authority for the giving of instruction No. 6. The case is not apposite. There the question was whether a taxi driver was entitled to rely on the asserted statement of the custodian of the child, that it was safe for the child to remain standing in the cab. The child, thereafter, fell out the door of the taxicab. Under those circumstances, we held an instruction was proper to the effect that the custodian had the paramount duty to care for the minor child under her care, as it was material to the jury's consideration of the issue of the taxi driver's right to rely on the custodian's above statement. In the instant case, there are no possible inferences from the evidence of reliance by the defendant on statements or conduct by the minor's father. The record shows the defendant was not aware of the presence of either the father or the minor until after the accident.

The giving of instruction No. 6 failed to remove from the jury the issue of the father's contributory negligence with which the record was impregnated.

The plaintiff further assigns error to the submission to the jury of the issue of the contributory negligence of the 8-year-old minor child. The following instruction was given by the court on this issue:

"You are instructed that a child between the ages of 7 and 14 years of age is presumed incapable of contributory negligence as herein defined.

"However, this presumption may be overcome by evidence concerning the age, background, experience, training, intelligence, and knowledge of the child in question."

■ No exception was taken to this instruction, and therefore, it may not be challenged in this appeal. *Atkins v. Churchill*, 30 Wn. (2d) 859, 194 P. (2d) 364 (1948).

The plaintiff assigns error to the trial court's failure to give plaintiff's proposed instruction No. 8, relating to the last clear chance doctrine. No exception was taken to the court's failure to give the proposed instruction, and we cannot consider this assignment. *Lung v. Cram*, 136 Wash. 397, 240 Pac. 1 (1925).

The plaintiff assigns error to the court's failure to give his proposed instruction No. 12, directing the jury to find the defendant guilty of negligence as a matter of law.

■ The defendant testified the visibility was poor, that he did not recognize the object in front of his car to be a bedroll, and that he thought it was a piece of debris. We think the evidence raised a jury question as to whether the defendant was negligent in failing to recognize the danger. Plaintiff's proposed instruction No. 12 was properly refused.

The plaintiff assigns error to the trial court's ruling that the jury could not consider the question of whether the harmful effects of poliomyelitis, which was contracted by the injured minor and diagnosed two months subsequent to the accident, were caused by the neck injuries resulting from the defendant's alleged negligent conduct. The medical testimony in the record is undisputed that the poliomyelitis settled primarily in the area of the minor's neck where he previously had been injured by the defendant's car.

The plaintiff's first contention in support of this assignment of error is that the evidence can sustain a jury finding that the poliomyelitis was contracted because of the minor's weakened condition which resulted from the accident. Our examination of the medical testimony in the record reveals that the evidence is wholly insufficient to support this contention. The trial court properly refused to submit to the jury the issue of damages under this theory. *Orcutt v.*

*Spokane Cy.,* 58 Wn. (2d) 846, 364 P. (2d) 1102 (1961).

■ However, the plaintiff supports his right to recover for damages due to poliomyelitis on the further theory that, although the initial contraction of the polio virus was not caused by the previous injuries, the weakened condition of the muscles in the minor's neck influenced or caused the polio to be more severe in that region and to settle there.

Dr. Axford, called as an expert medical witness for the plaintiff, testified at length in support of this theory, a part of which constitutes the following:

"A It is generally accepted that, at least in the case of muscle injuries of various types, that if polio then ensues later, it is more likely to attack that particular involved muscle. . . . Those relationships, I believe, are usually, generally accepted in reference to polio involving muscles which have endured certain stresses or trauma previously. Q Are those the very muscles that we find were involved in the polio in this incidence? A Yes, sir. . . . My feeling is that this injury was a predisposing influence, and the subsequent events, the polio, and particularly the fact that I don't feel it was any coincidence that it involved primarily the neck muscles, about the site of the injury. Q It was a predisposing influence, but did the injury cause the boy to have polio? A Well, there are probably several instances that went together, the instance is too subtle to say any one thing. Different factors entered into it, but I think the injury was one factor in causing the subsequent polio in settling in the neck and subsequent weakness in the neck muscles. . . . Q And you would agree that there is no connection between the fact that a person has an injury and the fact that he later contracts polio, is that correct? A No, I disagree there. I definitely think that an injury is one of the types of stress that is either local stress or generalized, which can be one of the factors that reduces the resistance and causes something that tends to predispose to these virus infections that you mention and particularly to cause it to localize in the injured area. I wouldn't say it is a cause. I would say it is definitely a predisposing factor. One factor among others. Other factors enter, too. I certainly feel that trauma is one of the influences here. . . ."

Dr. Morton, another of the plaintiff's expert witnesses, testified as follows:

"Q I take it from your report where you say—the localization in this case was probably influenced by the accident. You say that the settling in the neck muscles was influenced, in your opinion, by the pre-existing condition in his neck because of the injury? A That is correct. . . . Q What happened after he contracted it [polio] was that it settled in the neck, you say, because of a weakness in those muscles from the accident? A Yes. . . . Q To summarize, I take it from your letter here to Mr. Horton that the contraction of the polio itself, the actual infection in this young man, is something that is completely divorced from this traumatic incident. It is your thinking and feeling that the effect of the polio on the boy, as far as where it localized and the muscles affected, was influenced by the pre-existing injury and condition of the muscles of the neck, would that be a fair statement? A Yes. . . ."

We are satisfied there is substantial medical testimony in the record which, if believed, would justify a jury finding that the trauma was a cause of the poliomyelitis settling in the injured area of the minor's neck. A correct statement of the law in regard to the consideration of this factual issue is contained in the plaintiff's proposed instruction No. 5, which the trial court failed to give and to which proper exception was taken:

"You are instructed that if you find defendant liable for the injury to Kevin Adamson under the instructions covering this matter as otherwise given herein, and if you find that said injury rendered certain parts of the body of Kevin Adamson peculiarly susceptible to harmful effects of later accidents or illnesses, then the defendant is likewise liable for the further harm sustained, in the subsequent illness, if such harm would not have been sustained, had not that part of the body of Kevin Adamson been weakened by the negligence, if any, of defendant."

*Cf.* Restatement, Torts § 459. The trial court erred in taking this issue from the jury and in failing to give the proposed instruction.

■ The plaintiff also has assigned as error the trial court's failure to give the following proposed proviso in its instruction to the jury defining proximate cause:

" . . . However, an intervening act or occurrence which might reasonably have been anticipated does not

break the chain of proximate causation. In this connection, the foreseeability need not be of a particular kind but if the harm falls in a general field of danger which should have been anticipated, it is sufficient to establish liability."

This is a correct statement of the law which applies to the plaintiff's theory of the defendant's liability in this case. It was not otherwise covered in the instructions given. *McLeod v. Grant Cy. School Dist.*, 42 Wn. (2d) 316, 255 P. (2d) 360 (1953). It was error for the trial court to refuse to give this proposed instruction.

The remaining assignments of error do not merit our consideration or are controlled by our disposition of the other assignments of error in this appeal.

The judgment of the trial court for the defendants entered upon the jury verdict is reversed, and the cause is remanded for a new trial. The awarding of costs on this appeal will abide the final result of the cause.

FINLEY, C. J., DONWORTH, ROSELLINI, FOSTER, and HAMILTON, JJ., concur.

HILL, J. (dissenting)—I dissent. I cannot agree that any juror would, or could, have failed to understand that the negligence of the father was not an issue in this case, after the trial court had instructed the jurors:

" . . . that the negligence, if any, of the father cannot be imputed to the minor plaintiff in this case.

"You are further instructed that under the circumstances that the negligence of the father, if you so find, will not absolve the defendant from liability of any acts of negligence of the defendant."

The case was presented to the jury on proper instructions on the issue of whether the defendant driver's negligence was the cause of the original trauma, and I would affirm the judgment of dismissal based on the verdict of the jury.

WEAVER and OTT, JJ., concur with HILL, J.

October 26, 1962. Petition for rehearing denied.