[No. 5-39925-3.   Division Three.   November 26, 1969.]

G. WAYNE NICHOLSON *et al., Appellants,* v. ROBERT GIBLER *et al., Respondents,* BEN WALKER *et al., Appellants.*

BOBBY DUNN *et al., Appellants,* v. ROBERT GIBLER *et al., Respondents.*

*Robert E. Stoeve, Benjamin H. Kizer,* and *J. D. Mc-Mannis,* for appellants.

*Richard G. Jeffers* and *Garfield R. Jeffers,* for respondents.

MUNSON, J.—Two actions for personal injuries brought against Robert Gibler and his wife, and Robert Gibler's cross-action against plaintiffs Nicholson and others, for property damage stemming from the same traffic accident were consolidated for trial. All plaintiffs appeal from a judgment in favor of Gibler on his cross-complaint.

The Nicholsons' car became disabled on a county highway between Winona and Endicott, Washington, on September 3, 1964 at approximately 7:30 p.m. In response to Nicholson's request for assistance, Bobby Dunn drove a wrecker to the scene of the disabled car, arriving at approximately 9:15 p.m. He was accompanied by his then fiancee, Ruth Ann Walker. She, now Ruth Ann Dunn, was employed as a secretary-bookkeeper by her father Ben Walker, who owned the wrecker. After some preliminary maneuvering of vehicles, the Nicholsons' disabled car and the wrecker were parked back to back in the westbound lane of traffic —the car facing west and the wrecker facing east. Darkness was upon them. The wrecker's headlights were on low beam. It had three small oscillating red lights, one on the roof of the cab and two on the crossbeam of a crane located behind the cab, all of which were on. An amber light was located on each of the wrecker's front fenders. The area between the wrecker and the car was illuminated by two floodlights atop the same crossbeam as

the oscillating red lights. There were no flares or other warning devices set up east of this scene.

Defendant-cross-complainant Gibler, driving a 1956 two-ton Ford truck with a dump bed, and transporting a 350 Model International Tractor and a heavy loader, approached the scene from the east. He was accompanied by an 11-year-old boy.

The approach from the east, to the location of the car and wrecker, is straight for about 2,500 feet on a slight downgrade.

Gibler testified he saw the "bright" headlights from the beginning of the straightaway. He further testified he did not see any oscillating red lights prior to impact, nor did he comprehend the source of the lights to be on his side of the road until he was approximately 500 feet from the point of impact. It was at that time that he attempted to brake his vehicle. He testified he was then traveling at a speed of approximately 45 miles per hour and, considering the heavily loaded condition of his truck, was unable to stop in time to avoid the collision. He skidded for approximately 117 feet, turned his truck slightly to the right, and collided with the left front fender of the wrecker, which in turn struck the car. Gibler's truck continued along the right shoulder of the road.

At this time, Bobby Dunn was lying on the ground attempting to connect a cable between the car and the wrecker; he was run over. Ruth Ann Dunn was sitting in the cab of the wrecker, writing in the wrecker log, oblivious to Gibler's approach at the time of the collision. Irene Nicholson was in another car, parked in a driveway facing the road, at a point east of the wrecker. Seeing Gibler approach, she rushed along the south shoulder of the road to warn her husband of the impending collision and was struck by Gibler's truck. Wayne Nicholson, who had been standing alongside the vehicles watching Bobby Dunn, saw Gibler's approach and appreciated the impending danger in time to get out of the way without injury.

The only issue before this court is whether the trial

court erred in refusing to instruct the jury on the second phase of the last clear chance doctrine. We hold this refusal to be error.

■ The court is required to give an instruction on the second phase of last clear chance only when there is evidence from which reasonable minds could differ as to whether the following elements are present:

(a) Plaintiffs' negligence had terminated or culminated in a situation of peril from which they could not, by the exercise of reasonable care, extricate themselves;

(b) Defendant did not actually see the peril of the plaintiffs, but by keeping a reasonably careful lookout, commensurate with the dangerous character of the agency and the locality, should have seen the peril and appreciated it in time to have avoided the injuries; and

(c) Plaintiffs' failure to escape the injuries results from the defendant's failure to exercise the care described in (b) above. *Bennett v. Messick,* 76 Wn.2d 474, 457 P.2d 609 (1969); *Hester v. Watson,* 74 Wn.2d 924, 448 P.2d 320 (1968); *Bellah v. Brown,* 71 Wn.2d 603, 430 P.2d 542 (1967); *Glasper v. Westbo,* 59 Wn.2d 596, 369 P.2d 313 (1962); *Thompson v. Porter,* 21 Wn.2d 449, 151 P.2d 433 (1944); *Leftridge v. Seattle,* 130 Wash. 541, 228 P. 302 (1924); *Mosso v. E. H. Stanton Co.,* 75 Wash. 220, 134 P. 941 (1913).

■ We find sufficient testimony in the record to merit the giving of an instruction on the second phase of last clear chance. Each party is entitled to have his theory of the case presented to the jury for its consideration, if there is sufficient evidence to support it, even though the evidence supports different theories of law for both parties and even though there may conceivably be no effect upon the verdict. *Osborn v. Chapman,* 62 Wn.2d 495, 384 P.2d 117 (1963); *Hester v. Watson, supra.*

Judgment is reversed and the cause remanded for new trial.

Evans, C. J., and Green, J., concur.

---

Petition for rehearing denied December 18, 1969.