[No. 2-39796-3. Division Three. January 22, 1970.]

NANCY MEABON, *Respondent,* v. THE STATE OF WASHINGTON, *Appellant.*

*Slade Gorton, Attorney General, Theodore O. Torve* and *Joseph S. Montecucco, Assistants,* for appellant.

*Robert L. Fraser* (of *Dano, Cone & Fraser*), for respondent.

MUNSON, J.—Defendant, State of Washington, appeals from a judgment awarding damages for personal injuries suffered by Nancy Meabon on June 17, 1965, when the car in which she was a passenger left a state highway due to the slippery condition of the roadway.

The mishap occurred on U. S. Highway 10, approximately 4 miles east of Ellensburg, on a patch of asphalt overlay laid in August of 1964. Because of the nature of the oil mixture used and the ensuing climatic conditions, the overlay became excessively oily within a short while. In an attempt to remedy this condition, a second sealer coat was applied in October of 1964 but, again, the type of oil used merely aggravated the excess accumulation of oil as the air temperature warmed the following spring and summer. This particular oil does not cure sufficiently in cold weather to hold down the gravel and thereby seal an overlay. As a result, its use for any purpose on a major highway east of the Cascades is forbidden by state highway department specifications between the middle of September and the following March. The defendant's maintenance superintendent, in charge of the Ellensburg area, knew it was too late to apply the second sealer coat in October, but felt the action was warranted as an attempt to remedy the dangerous condition which then existed.

The following spring the overlay continued to bleed and the accumulation of oil on the surface of the highway progressively increased so that the overlay became extra-ordi-

narily slippery when wet. During April and May of 1965, the patch was covered with sand and gravel, but to no avail. The condition remained unchanged.

On June 4, 1965—almost 8 months after the maintenance superintendent initially recognized the danger thus created—"Slippery When Wet" signs were installed. The sign warning traffic in the direction plaintiff was traveling was 720 feet east of the patch and approximately 1,500 feet from the place where the car skidded. However, no sign reducing the speed limit through this slippery area accompanied the warning sign. In fact, following the "Slippery When Wet" sign was a "60 M.P.H." speed-limit sign.

The Department of Highways Maintenance Manual, with which all maintenance employees are expected to be thoroughly familiar, contains a section on "smooth, slippery areas." The manual, which was not consulted by the maintenance personnel after they were aware of the above condition and prior to the accident, describes two methods by which the above condition could be remedied, *i.e.*, by either scarifying the surface of the overlay or burning off the excess oil. Although the condition existed over a prolonged period and both remedies were readily available, neither method was attempted until late in July 1965. The burning process was then employed and the condition eliminated in 3 days.

On June 17, 1965, Miss Meabon; age 15, was a passenger in a car driven by her brother, Gary Meabon. They planned to go to Gary's wedding in Portland, Oregon, by way of Kirkland, Washington. After the wedding she was to accompany her parents on a vacation. It had been raining that morning and the highway was wet. At the moment the accident occurred, the Meabon car was passing another car at an approximate speed of 55 to 60 miles per hour. The Meabon car skidded off the roadway, overturned and injured his sister. There is no indication that Meabon applied his brakes or made any quick corrective movements which could have caused his vehicle to leave the roadway. He did not recall seeing the warning sign, and admitted he was

driving faster than the flow of traffic through the area at the time.

The primary issue on appeal arises from the trial court's refusal to give an instruction submitting the question of the adequacy of warning devices.

As stated in *Jurgens v. American Legion, Cashmere Post 64, Inc.*, 1 Wn. App. 39, 41, 459 P.2d 79 (1969):

> The elements of actionable negligence are (1) the existence of a duty, (2) a breach thereof, which was a proximate cause of, (3) a resulting injury. [Citing cases.]

The duty imposed upon the state in the maintenance of its public highways is the same as set forth for municipalities in *Owens v. Seattle*, 49 Wn.2d 187, 191, 299 P.2d 560, 61 A.L.R.2d 417 (1956), *i.e.*, to exercise ordinary care in the repair and maintenance of its public highways, keeping them in such a condition that they are reasonably safe for ordinary travel by persons using them in a proper manner in exercising ordinary care for their own safety. *Provins v. Bevis*, 70 Wn.2d 131, 138, 422 P.2d 505 (1967); *Ulve v. Raymond*, 51 Wn.2d 241, 317 P.2d 908 (1957); *DeYoung v. Campbell*, 51 Wn.2d 11, 315 P.2d 629 (1957); *Bradshaw v. Seattle*, 43 Wn.2d 766, 264 P.2d 265, 42 A.L.R.2d 800 (1953); *Simmons v. Cowlitz County*, 12 Wn.2d 84, 90, 120 P.2d 479 (1941); *Berglund v. Spokane County*, 4 Wn.2d 309, 103 P.2d 355 (1940).

As stated in *Provins v. Bevis, supra* at 138:

> At the outset, it should be observed that we are committed to the rule that, although a county is not an insurer against accident nor a guarantor of the safety of travelers upon its roadways, it is nevertheless obligated to exercise ordinary care to keep its public ways in a safe condition for ordinary travel. . . . And, this obligation includes the responsibility to post adequate and appropriate warning signs when such are required by law, or where the situation, to the county's actual or constructive knowledge, is inherently dangerous or of such a character as to mislead a traveler exercising reasonable care. [Citing cases.]

Inherent in this duty of ordinary care is the alternative

duty either to eliminate a hazardous condition, or to adequately warn the traveling public of its presence. In *Holmquist v. Grant County*, 54 Wn.2d 376, 379, 340 P.2d 788 (1959) an instruction setting forth this alternative duty, from which counsel based a portion of his argument, was upheld. Therefore, the question of the adequacy of the warning device is critical in determining the state's liability.

Plaintiff contends the giving of an instruction relating to warning devices would preclude her recovery under a theory of concurrent causation, *i.e.*, the state's and the driver's negligence. To accept plaintiff's theory would impose upon the state a dual standard of care in the repair and maintenance of its public highways with regard to those using the highways, *i.e.*, one applicable to drivers and another applicable to passengers. The state's compliance with the requirement of an adequate warning would be a defense from liability for injury to a driver, but not for injury to a passenger. Such a position is founded upon the reasonable foreseeability by the state of a driver's disregard for, or failure to see, a warning sign, resulting in a passenger's injury. The logical conclusion of this theory would result in the imposition of absolute liability upon the state for failure to eliminate dangerous highway conditions, resulting in injuries to passengers, without consideration of the adequacy of any warning of the dangerous condition. See *Callahan v. City & County of San Francisco*, 249 Cal. App. 2d 696, 57 Cal. Rptr. 639, 643-644 (1967). Such is not the rule in Washington.

The standard of care required of the state in the maintenance of its public highways remains the same towards both the driver and his passengers, *i.e.*, the traveling public. *Nelson v. Seattle*, 16 Wn.2d 592, 134 P.2d 89 (1943); 19 McQuillin, The Law of Municipal Corporations, § 54.48-49, 132-134. Until plaintiff proves a breach of the state's duty of ordinary care, the state has committed no legal wrong. In this context, a passenger's well-being is in the hands of his driver.

■    There is sufficient evidence in the record to require the giving of an instruction on the issue of the adequacy of the warning devices. Each party is entitled to have his theory of the case presented to the jury for its consideration; failure to do so constitutes reversible error. *Nicholson v. Gibler*, 1 Wn. App. 368, 461 P.2d 900 (1969).

Failure to instruct on this issue requires that a new trial be granted. However, since other assignments of error may arise on retrial, we shall consider them.

The second issue presented is closely related to the above. Defendant contends the trial court erred in failing to dismiss plaintiff's complaint as a matter of law, because the negligence of the state, if any, did not come within RCW 4.92.090, which establishes the state's tort liability. In other words, when the legislature required adoption of the uniform manual for traffic control devices (RCW 47.36.020, .030, and .053) a standard of care is established. When the state has complied therewith, *i.e.*, posting a prescribed warning sign, the state is not negligent as a matter of law. Defendant's contention is based upon *Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 407 P.2d 440 (1965). That case is distinguishable. The injury to Miss Meabon arises from conduct within accepted concepts of negligence applicable to private persons or corporations, *Provins v. Bevis, supra*, and not that area of governmental policy considerations contemplated by *Evangelical*.

Furthermore, compliance with the manual and the adequacy of the sign posted are relevant issues herein; particularly when viewed in terms of the state's failure to also post sign W-35, "Advisory Speed" sign, the use of which is described in the same uniform manual as follows:

The Advisory Speed sign is designed for use with any standard yellow warning sign to indicate the maximum safe speed around a curve or *through a hazardous location*. When used, it shall be mounted immediately below the standard warning sign, and on the same post, with its lower edge not less than 5 feet above the crown of the roadway. The speed shown shall be in multiples of 5 miles. In no case shall such a sign be erected until the

safe speed has been determined by accepted traffic engineering procedures and officially approved. Because changes in surface characteristics, sign distance, etc., may alter the safe speed, each location should be periodically rechecked and the speed sign corrected if necessary.

(Italics ours.) The trial court was correct in denying defendant's motion to dismiss on this issue.

■ Defendant contends that the negligence of Gary Meabon should be imputed to plaintiff solely because of the family relationship. The evidence does not show the presence of any of the elements of joint venture; only the fact that the driver and the plaintiff are brother and sister en route to the brother's wedding and a family vacation is established. Such evidence, by itself, is insufficient to support an imputation of negligence. *Finn v. Drtina*, 30 Wn.2d 814, 194 P.2d 347, 2 A.L.R.2d 919 (1948); *Korslund v. Troup*, 67 Wn.2d 773, 409 P.2d 856 (1966).

Defendant contends the court erred in failing to instruct on the negligence of Gary Meabon and the duties imposed on him as driver. Both issues relate to the question of whether or not Gary Meabon's manner of driving was the sole proximate cause of the accident. The trial court was correct in refusing to give defendant's proposed instructions. If the jury found defendant was negligent, the question of Gary Meabon's negligence would have no bearing on the case, unless his negligence could be imputed to his sister. We have held to the contrary. Further, if the jury found the state was not negligent, then whether Gary's negligence was the sole proximate cause of the injury is immaterial in determining the state's liability. *Adamson v. Traylor*, 60 Wn.2d 332, 373 P.2d 961 (1962).

Defendant objects to the italicized portion of instruction No. 6, as set forth below:

A state has a duty to exercise ordinary care in the repair and maintenance of its public highways to keep them in such a condition that they are reasonably safe for ordinary travel by persons using them in a proper man-

ner and exercising ordinary care for their own safety. *In this case Nancy Meabon was using the highway in a proper manner and was exercising ordinary care for her own safety.*

(Italics ours.) This instruction does not, as claimed by defendant, change the state's duty of care, *i.e.*, to either eliminate the hazard or to warn the traveling public of its presence, but rather it eliminates the defense of imputing negligence of the driver to the passenger. A separate instruction relating to the driver's negligence not being imputed to a passenger would perhaps be more appropriate.

■ Defendant assigns error to the trial court's admission of evidence of subsequent repairs to the roadway, alleging the question of feasibility or practicality of repair had not been raised by them. Evidence of subsequent repair is admissible if feasibility is a factor of the plaintiff's theory, regardless of whether the defendant raises feasibility as a defense. *Brown v. Quick Mix Co.*, 75 Wn.2d 833, 454 P.2d 205 (1969). The evidence herein was properly a factor in the plaintiff's case.

■ Defendant also assigns error to the trial court's admission into evidence of two prior accidents in May 1965 on the same stretch of overlay. Admission of such evidence of prior experience is within the trial court's discretion. *Blood v. Allied Stores Corp.*, 62 Wn.2d 187, 381 P.2d 742 (1963). We find no abuse of discretion by the trial court. However, in view of the admission by the maintenance superintendent that the overlay was extremely slippery and dangerous, the evidence was cumulative.

Defendant's last assignment of error relates to final argument of plaintiff's counsel wherein he asked the jurors to place themselves in the position of Miss Meabon and experience some of the problems she would encounter because of her injury. This is a highly questionable request. A juror's duty is to act disinterestedly and impartially. WPI 1.01. Counsel asked them to do otherwise. We do not contemplate this request will be made during summation on the retrial of this case.

Judgment is reversed and the case remanded for new trial.

EVANS, C. J., concurs.

GREEN, J. (dissenting)—I dissent from that portion of the majority opinion which holds the trial court committed error in refusing to give the following instruction:

If you find that the State of Washington posted signs reasonably adequate to warn users of this highway of the condition existing at the place of this accident, you shall find in favor of the defendant.

In my opinion this instruction was properly refused.

The trial court properly instructed that:

A state has a duty to exercise ordinary care in the repair and maintenance of its public highways to keep them in such a condition that they are reasonably safe for ordinary travel by persons using them in a proper manner and exercising ordinary care for their own safety.

It is evident from the plaintiff's verdict that the jury found the state violated its duty and was negligent. Adequacy of the warning sign is only one factor under all of the conditions and circumstances to be considered by the jury in deciding whether the state exercised ordinary care to make the highway reasonably safe. Defendant's proposed instruction would make adequacy of the warning sign the sole criterion for determining the state's liability. In this respect it was improper. This was the only instruction on warning devices requested by either party.

It is axiomatic that the trial court is not required to rewrite or give proposed instructions which are unduly slanted or which otherwise incorrectly state the law. [Cases cited.]

*Provins v. Bevis,* 70 Wn.2d 131, 140, 422 P.2d 505 (1967). The majority opinion in effect holds that if adequate signs are posted warning of the danger, the driver, as well as the passenger, is automatically deprived of recovery for the state's negligence.

There is little doubt that an *adequate* sign warning a

driver of a dangerous condition would probably cut off liability to him because of his contributory negligence in failing to heed the warning. Both would be negligent. The negligence of the state does not disappear. The mere posting of a sign does not remove the state's negligence unless the jury could find it was not a proximate cause of the accident, which they did not do in this case. The negligence of the driver, if any, in this case, could not be imputed to the plaintiff passenger. Plaintiff could bring an action against either or both. The foregoing are mere applications of well-known principles of negligence law. In my opinion, logic cannot support a conclusion that an adequate sign automatically relieves the state from liability to passengers for negligence in repairing and maintaining the highways. The requested instruction was properly refused.

Further, when a party can adequately argue his theory of the case from the instructions given, it is not necessary for the trial court to buttress jury argument with specific instructions. *Holmquist v. Grant County*, 54 Wn.2d 376, 378, 340 P.2d 788 (1959). The duty imposed upon the state is to exercise ordinary care in the repair and maintenance of its public highways, keeping them in such condition that they are reasonably safe for ordinary travel by persons using them in a proper manner and exercising ordinary care for their own safety. *Provins v. Bevis, supra.* The jury was so instructed. They were also instructed on the elements of negligence including proximate cause. These instructions were broad enough for the state to argue its theory that the warning signs were adequate and therefore the state's negligence, if any, was not a proximate cause of the accident. Counsel for the state did so argue. The trial judge was obliged to do no more.

I would affirm the judgment.

---

Petition for rehearing denied February 20, 1970.