# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LAURA STOCKER, individually and as Personal Representative of the Estate of Roger Stocker,<br><br>        Respondent,<br><br>        v.<br><br>THE UNIVERSITY OF WASHINGTON,<br><br>        Appellant. | No. 85745-2-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

FELDMAN, J. — Roger Stocker suffered a traumatic brain injury after crashing his bicycle on a speed bump on a University of Washington (UW) campus roadway. Laura Stocker, individually and as personal representative of the estate of Roger Stocker, sued UW for negligence. The jury found negligence, awarded damages to Stocker and Roger totaling over $4 million, and allocated 65 percent of the fault to Roger and 35 percent to UW.[1] UW appeals the trial court's rulings (a) denying its motion for additional time to examine its witnesses after it had exhausted the 11-hour limit that the court imposed before trial, and (b) declining to give its proposed jury instruction regarding its duty of care. Finding no error, we affirm.

---

[1] Because this matter involves both Roger and Laura Stocker, we refer to Roger by his first name to avoid confusion. And, given her role as plaintiff, we refer to Laura Stocker as Stocker.

I

In 2015, UW installed a 2-inch tall by 25-inch long speed bump on a campus roadway. Several bicyclists crashed after running over the speed bump, so UW painted the speed bump white and painted the word "BUMP" in two-foot-tall capital letters 30 feet before the speed bump in both directions. Despite these warnings, Roger ran over the speed bump on his bicycle, crashed, and suffered a traumatic brain injury on September 12, 2017.

Many years before the accident, Roger had been diagnosed with Alzheimer's disease. The parties dispute whether the disease affected Roger's ability to ride a bicycle safely. Roger died two years after the accident, at the age of 68, shortly after entering the hospital for obstructed bowels. Stocker was subsequently appointed Personal Representative of Roger's estate and, on August 27, 2020, sued UW for wrongful death, alleging that UW's negligence in designing, constructing, and maintaining the speed bump caused Roger's accident, injuries, and death.

At a pretrial conference on December 15, 2022, the parties provided preliminary estimates regarding trial length. Stocker's counsel estimated they would need three or four days for Stocker's case, and UW's counsel said, "I think the University's case would be short, and I would say two days." The court stated it would "take that as an estimate" and issued a pretrial order scheduling a "5-6 day remote jury trial." The pretrial order also acknowledges that UW's counsel would be "unavailable . . . beginning June 5, 2023 for the remainder of June."

Two days before opening statements, on May 16, 2023, the court asked the parties again about their time estimates for trial. Stocker's counsel estimated 14.5

hours for direct and 7.5 hours for cross-examination, while UW's counsel estimated 12.9 hours for direct and redirect and 16 hours for cross-examination. UW's counsel also informed the court that "there was a time where I was going to be unavailable [after June 5 for the remainder of June] but that is no longer true." The court responded, "that is good to know that we have a little bit more breathing room." Nonetheless, the court warned the parties it would impose time limits if they did not reduce their estimates to match those provided in December 2022. The next day, Stocker increased her estimate by 3.5 hours while UW's estimate stayed the same.

On May 18, the same day as opening statements, the trial court announced time limits for the examination of witnesses based on the parties' December 2022 estimates. Stocker was allocated 22 hours (calculated as 5.5 hours per day multiplied by four days) while UW was allocated 11 hours (calculated as 5.5 hours per day multiplied by two days). The court then explained to both parties:

> [Y]ou [referring to Stocker] get 22 hours total for your direct examinations, cross-examinations, examinations during rebuttal, and that's it, and that the defense gets 11 hours for its direct examination, cross-examinations, redirects, recrosses; that's it. So if you spend all that time on one witness and you run out of time, so be it. So you'll have to figure out how you want to wisely use your time.

UW's counsel did not object or indicate that 11 hours to examine witnesses would not be enough time. *Id.* To the contrary, UW's counsel generally took the position that both parties should be held firmly to their previous estimates. *See infra* at 9-10.

At trial, the court tracked how much time each side spent examining witnesses and reported each side's running total. On June 1, after it had used 10

of its 11 allotted hours, UW filed a motion seeking an additional 10 hours to examine witnesses. The court denied the motion, noting that it had already informed the jurors that they would likely complete their jury service by June 8. The court also stated that it might have extended the trial "if there was an emergency that arose," but concluded that UW's purported need for additional time "was a problem, at least in part, created by the parties," noting "a lot of time was spent on motions in limine . . . [which] ate away our time." At the end of the day on June 5, UW ran out of allotted time, and the court terminated UW's direct examination of its Alzheimer's disease expert, Dr. Peter Rabins. According to UW's subsequent offer of proof, it still had several additional witnesses who were prepared to testify—if permitted to do so—on the issues of negligence, contributory fault, and damages.

Also during the trial, the parties discussed jury instructions regarding UW's duty of care. Stocker proposed the jury be instructed in accordance with WPI 140.01.01, which states: "The defendant's duty includes a duty to take reasonable steps to remove or correct hazardous conditions that make a road unsafe for ordinary travel including hazardous conditions that may exist along the road." 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 140.01.01 (7th ed. 2022). In response, UW argued the jury should also be instructed that UW "has an alternative duty here. We can either correct the hazardous condition or we can warn of the hazardous condition." UW proposed an additional instruction, which read: "The University of Washington's duty of ordinary care is to either eliminate a hazardous condition or to adequately warn the traveling public of its presence."

The trial court rejected UW's additional instruction as unnecessary, stating, "unless I'm missing something . . . a corrective action could be . . . putting a speed [b]ump . . . but it also could be . . . painting it a brighter color, and . . . putting up appropriate signage." Stocker's counsel similarly acknowledged, "[UW] can argue that they corrected the dangerous condition by painting it white, by painting 'bump.'" The trial court also explained, "We do have a WPI that does not include the failure to warn language. So I'm going to keep it." Consistent with the trial court's ruling and Stocker's response, UW asserted in its closing argument that its written warnings "corrected" the hazardous condition. *See infra* at 16-17. The jury subsequently found negligence, awarded damages to Stocker and Roger totaling over $4 million, and allocated 65 percent of the fault to Roger and 35 percent to UW. UW appeals.

II

A.    Time Limits

UW asserts the trial court abused its discretion in denying its motion for additional time to examine its witnesses after it had exhausted the 11-hour limit that the court imposed before trial. We disagree.

Our Supreme Court has explained that "[t]he trial court is generally in the best position to perceive and structure its own proceedings" and, therefore, "has broad discretion to make a variety of trial management decisions, [including] 'the mode and order of . . . presenting evidence.'" *State v. Dye*, 178 Wn.2d 541, 547, 309 P.3d 1192 (2013) (quoting ER 611(a)). ER 611(a) also states that trial courts have discretion over the mode and order of presenting evidence "so as to . . . make the . . . presentation effective for the ascertainment of the truth [and] . . . avoid

needless consumption of time." This court has likewise recognized, "'Trial judges have wide discretion to manage their courtrooms and conduct trials fairly, expeditiously, and impartially. We, therefore, review a trial judge's courtroom management decisions for abuse of discretion.'" *Pierce v. Bill & Melinda Gates Found.*, 15 Wn. App. 2d 419, 444, 475 P.3d 1011 (2020) (quoting *In re Marriage of Zigler and Sidwell*, 154 Wn. App. 803, 815, 226 P.3d 202 (2010)). As discussed below, time limits for the examination of witnesses are sometimes used to ensure that trials are conducted fairly and expeditiously and are similarly reviewed for abuse of discretion. A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

Time limitations in trial proceedings have become increasingly common. A leading law review article summarizes the benefits and risks of such limitations as follows:

> Some trial time limits are in some instances a good thing. Only a curmudgeon or fanatic would blame Judge Jon Newman for his decision to impose restrictions in *SCM Corp. v. Xerox Corp.* to keep that gargantuan proceeding "within manageable proportions." Further, as John Henry Wigmore declared nearly a century ago: "It has never been supposed that a party has an absolute right to force upon an unwilling tribunal an unending and superfluous mass of testimony limited only by his judgment or whim." Yet, like so many other inventions of the modern era, trial time limits, if they are to be used, must not be used excessively or indiscriminately; rather, they must be used sparingly and in a targeted fashion. As Judge Richard Posner noted while affirming the judgment in *McKnight v. General Motors*: "[T]o impose arbitrary limitations, enforce them inflexibly, and by these means turn a federal trial into a relay race is to sacrifice too much of one good—accuracy of factual determination—to obtain another—minimization of the time and expense of litigation."

Nora Freeman Engstrom, The Trouble with Trial Time Limits, 106 Geo. L.J. 933, 981-82 (2018) (internal footnotes omitted). The prevailing consensus appears to be that while time limits can sometimes be beneficial, care should be taken to ensure that such limits do not prevent the parties from receiving a fair trial.

Although time limitations in trial proceedings are not uncommon, there are no published appellate opinions in Washington that address the propriety of such limitations. While unpublished, this court's recent opinion in *Welborn v. Snohomish County*, No. 82235-7-I (Wash. Ct. App. Nov. 8, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/822357.pdf, is instructive here.[2] The trial court in *Welborn* allocated 8.5 hours to each party for witness presentation. *Id.* at *4. There was no argument in *Welborn*, nor is there here, that the trial court lacked authority to impose such a limit. *Id.* at *11 n.9. Instead, the plaintiffs in *Welborn* argued "(1) the trial court's allocation of time among the parties was arbitrary and (2) those time limits forced the plaintiffs not to call certain witnesses and limited their ability to cross-examine defense experts." *Id.* at *8-9. Applying an abuse of discretion standard of review, this court rejected the argument, noting that the trial court indicated it would entertain a request for additional time upon a suitable offer of proof, the plaintiffs failed to ask for more time in response to this invitation to do so, and the plaintiffs failed to explain to the trial court or on appeal what particular evidence they were unable to elicit from these witnesses and why this evidence

---

[2] Although *Welborn* is unpublished, we may properly cite and discuss unpublished opinions where, as here, doing so is "necessary for a reasoned decision." GR 14.1(c). We adopt the reasoning of *Welborn* as reflected in the text above.

was significant. *Id.* at *11. The court also rejected the plaintiffs' corresponding due process argument. *Id.* at *9 n.8.

As *Welborn* and the many other cases cited by the parties here illustrate (*see infra* at 12-13), appellate courts have identified numerous considerations when reviewing a trial court's ruling imposing or enforcing time limits for the examination of witnesses at trial. Depending on the circumstances of each individual trial, courts may consider:

> (1)    whether the trial court appropriately considered the parties' own time estimates for examining witnesses in allocating trial time;
>
> (2)    whether time is allocated equitably based on which party has the burden of proof on pertinent claims and defenses;
>
> (3)    whether the aggrieved party timely objects to the imposed time limits and provides a rationale for why the limits are inadequate;
>
> (4)    whether the time limits are announced sufficiently in advance of trial and the trial court tracks time during trial to avoid unfair surprise;
>
> (5)    whether the trial court allows a party additional time upon a suitable offer of proof or unforeseen circumstances in the examination of witnesses; and
>
> (6)    whether there is a reasonable inference from the record that the aggrieved party's improvident use of time caused the purported need for additional time.

As *Welborn* illustrates, these considerations are neither exhaustive nor mandatory. Rather, these are circumstances that appellate courts may contemplate (to the extent relevant) when reviewing a trial court's ruling imposing or enforcing time limits for the parties' examination of witnesses at trial.

Here, some circumstances weigh in favor of affirmance, while others weigh in favor of reversal. Weighing in favor of reversal, the initial allocation of time appears to have been premised on a misunderstanding. UW's counsel was asked

to, and did, provide an estimate of the amount of time needed to present the "University's case." The trial court then utilized that pretrial estimate to impose an 11-hour limit applicable to UW's "direct examination, cross-examinations, redirects, recrosses; that's it." And it imposed this limitation just prior to opening statements, after UW had presumably planned its case. Additionally, while the court permitted UW to make an offer of proof summarizing the additional evidence it would have introduced had it been permitted to do so, that occurred after the court had already denied UW's request for additional time and was solely to "preserve the issue for appeal."[3]

While the above circumstances weigh in favor of reversal, other circumstances weigh in favor of affirmance. For example, the trial court's limits were expressly premised on the parties' previous estimates regarding the amount of time needed to present their case, which the court memorialized in a pretrial order scheduling a "5-6 day remote jury trial." Initially, UW's position was that both parties should be held firmly to their estimates. Thus, when Stocker's counsel complained about their previous estimate and suggested it was insufficient, UW's counsel responded:

> Judge Ramseyer [the trial court judge at the December 2022 pretrial conference] asked both parties and then set that time. It wasn't just our input. Asked both parties and then that's what she ordered.
>
> And so to claim that they never agreed to it, one, it's kind of irrelevant, even though they did because they had input, we had

---

[3] UW also was allocated half the amount of time as compared to Stocker, which arguably was insufficient. While Stocker had the burden of proof at trial, UW intended to show that Roger was at fault to establish his share of any adjudicated liability. But we need not consider whether a different ratio may have been more appropriate because, as clarified at oral argument, UW does not claim the initial allocation of time to examine witnesses was inadequate or unfair. Wash. Ct. of Appeals oral argument, *Stocker v. University of Washington*, No. 85745-2-I (Nov. 14, 2024) at 4 min., 35 sec. to 5 min. 40 sec. (on file with court).

input, and then the judge said this is how many hours this trial is going to be.

The first I've heard them object to that is now. They didn't object to her. And so she asked both of us, and then she said this is how long the trial will be.

Similarly, when the trial court announced its time limits, UW's counsel did not object or indicate this would not be enough time. Additionally, UW's counsel informed the trial court in December 2022 he expected to be "unavailable . . . beginning June 5, 2023 for the remainder of June" and did not retract this statement until the May 16, 2023 pretrial hearing—just two days prior to opening statements.

Also, in reliance on the parties' previous estimates, the trial court informed potential jurors that they would be finished with deliberations by 4 p.m. on June 8, which the court described as a "conservative" estimate. Some of that time, as the court noted, was then "spent on motions in limine . . . [which] ate away our time." Then, during trial, the court tracked how much time each side spent examining witnesses and regularly informed the parties of each side's running total. Despite knowing Stocker had been allocated twice as much time as UW for witness examination, UW appears to have spent roughly an equal amount of time on cross-examination in comparison to Stocker's direct examination and substantially more time cross-examining Stocker. In its appellate brief, UW essentially concedes that its strategy was to intentionally run out the clock and then ask for more time:

Once the court had imposed the inadequate time limit, UW's sole hope of obtaining a full and fair hearing was to cross-examine Plaintiff's witnesses as appropriate and presume that the court would later grant more time when it became clear that the limit would almost entirely preclude the defense case.

Consistent with this acknowledgement, UW's counsel did not request additional time until the seventh day of trial, after Stocker's counsel had presumably limited their own examination of witnesses. Thus, there is a reasonable inference from the record that UW's improvident use of allotted time caused the purported need for additional time.

On this record, the trial court appropriately exercised its broad discretion to conduct the trial "fairly, expeditiously, and impartially" (*Pierce*, 15 Wn. App. 2d at 444) in denying UW's motion for additional time to examine its witnesses. Because some of the relevant circumstances weigh in favor of affirmance, the trial court exercised its discretion based on tenable grounds and tenable reasons. And while some circumstances weigh in favor of reversal, "'[a] reviewing court may not find abuse of discretion simply because it would have decided the case differently—it must be convinced that 'no reasonable person would take the view adopted by the trial court.'" *Gilmore v. Jefferson County. Pub. Transp. Benefit Area*, 190 Wn.2d 483, 494, 415 P.3d 212 (2018) (quoting *State v. Salgado-Mendoza*, 189 Wn.2d 420, 427, 403 P.3d 45 (2017)). Given the mix of relevant considerations, including UW's contribution to the alleged error, we cannot say that no reasonable person would take the view adopted by the trial court. Accordingly, there was no abuse of discretion.

While the parties cite numerous cases in support of their positions in this appeal, those cases merely apply the same considerations that are listed above in different circumstances. For example, Stocker relies heavily on *General Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1508-09 (9th Cir. 1995), where the Ninth Circuit noted (a) the trial court "regularly informed" both sides of

- 11 -

their use of time, (b) appellant's counsel failed to heed warnings to save sufficient time for further examination of witnesses, and (c) the "allocation of additional time to [appellant] would have been unfair to [respondent]." Similarly, UW relies heavily on *California Crane School v. National Commission for Certification of Crane Operators*, 226 Cal. App. 4th Supp. 12, 23 (Cal. Ct. App. 2014), where the appellate court noted (a) the trial court "reasonably" set time limits, (b) the appellants "did not object or provide any rationale why the trial could not be completed within that time period," and (c) the "reasonable inference" from the record showed that the appellants ran out of time due to their own case management. While UW generally agrees (as do we) that all such considerations are potentially relevant in determining whether a trial court abused its discretion, it views the record differently and fails to accord deference to the trial court's determination as required by the applicable standard of review.

In addition to citing cases that apply the same constellation of relevant considerations, UW also cites a case—*Plaia v. Stewart Enterprises, Inc.*, 229 So. 3d 480 (La. Ct. App. 2016)—that sets forth six "*non-exclusive*" guidelines for a trial court to consider in imposing limits on the time parties have to examine witnesses. *Id.* at 490. Those guidelines are as follows:

(1)     litigants have a general right to present all evidence he/she possesses with regard to the contested issue at trial that is relevant, admissible, and not cumulative, tempered by La. C.E. art. 403[4];

(2)     before imposing time limitations, the trial judge should be thoroughly familiar with the case through pretrial proceedings,

---

[4] Like ER 403 in Washington, La. C.E. art. 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay or waste of time. *Id.* at 490 n.8.

including status conferences, pretrial conferences, and discovery;

(3)   if time limitations are used, time limits should normally be imposed on all parties, before any party presents any evidence, and sufficiently in advance of trial for the litigants to prepare for trial within the limits imposed;

(4)   the trial judge should inform the parties before the trial begins that reasonable extensions of the time limits will be granted for good cause shown;

(5)   the trial judge should develop an equitable method of charging time against each litigant's time limits. Rather than charging each side for the total time used to present its case, the judge should generally charge each party for the time the litigant uses, whether it be used on direct or cross-examination; and

(6)   the trial judge should put all of the court's rulings regarding time limitations and the reasons for the rulings on the record.

*See id*. at 490-91. This test, while framed differently, would lead to the same result as the analysis described above because, with one possible exception (discussed below), the trial court in this case complied with these guidelines.

UW emphasizes the fourth consideration in *Plaia*—that the trial judge should inform the parties before trial begins that reasonable extensions of time limits will be granted for good cause shown—and asserts that this consideration, alone, may merit reversal. This argument fails on multiple grounds. First, unlike in *Plaia*, no appellate authority in Washington has imposed such a requirement, nor do we do so here. Second, while the trial court here did not inform the parties that reasonable extensions of the time limits would be granted for good cause, it also did not state unequivocally that no such extensions would be granted under any circumstances. The fact that UW "presume[d] that the court would later grant more time" indicates that it believed, based on the trial court's representations to

the parties, that the court would entertain a request for a reasonable extension of time upon a showing of good cause. The trial court later indicated as much when it clarified that it might have extended the trial "if there was an emergency that arose," but here there was none. And lastly, while the court in *General Signal Corporation* (also cited by UW on this point) stated that "[g]enerally, courts look upon rigid hour limits for trials with disfavor," it upheld the trial court's imposition of rigid time limits based on the same considerations outlined above, such as clear communication of the parties' use of allocated time during trial, improvident use of allocated time by the aggrieved party, and concerns about rewarding (or at least condoning) the inefficient use of time while penalizing the party who managed their time more effectively. 66 F.3d at 1508-09. Thus, the alleged rigidity of the trial court's time limits is not dispositive here.

UW also asserts it was denied a fair trial in violation of its procedural due process rights. This argument fails on waiver grounds because UW did not present a due process argument in the trial court. And while RAP 2.5(a) allows this court to "refuse to review any claim of error which was not raised in the trial court," UW does not argue that the exception to RAP 2.5(a) for manifest errors affecting a constitutional right applies here. But even if we exercise our discretion to address the issue, UW's due process argument would fail on the merits for the same reasons discussed above. In general, "'procedural due process requires that [a party] receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation' of a protected interest." *Fields v. Dep't of Early Learning*, 193 Wn.2d 36, 44, 434 P.3d 999 (2019) (quoting *Amunrud v. Bd. of Appeals,* 158 Wn.2d 208, 216, 143 P.3d 571 (2006)). Additionally, "[i]t is well

settled that a litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials." *In re Elmore*, 162 Wn.2d 236, 267, 172 P.3d 335 (2007) (citing *Brown v. United States*, 411 U.S. 223, 231-32, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973)). Here, as the above discussion shows, UW received notice of the time limit for its examinations of witnesses and had an opportunity to immediately object but failed to do so. And perhaps most significantly, the record shows that UW, not the trial court, was primarily responsible for its inability to examine its remaining witnesses within the court's 11-hour time limit. UW's due process argument thus fails.

B.    Jury Instructions

UW also argues the trial court erroneously declined to give its proposed instruction that its "duty of ordinary care is to either eliminate a hazardous condition or to adequately warn the traveling public of its presence." We disagree.

"Whether to give a certain jury instruction is within a trial court's discretion and so is reviewed for abuse of discretion." *Fergen v. Sestero*, 182 Wn.2d 794, 802, 346 P.3d 708 (2015). "Jury instructions are generally sufficient if they are supported by the evidence, allow each party to argue its theory of the case, and when read as a whole, properly inform the trier of fact of the applicable law." *Id.* Relatedly, "'it is not error for a trial court to refuse a specific instruction when a more general instruction adequately explains the law and allows each party to argue its case theory.'" *City of Seattle v. Pearson*, 192 Wn. App. 802, 821-22, 369 P.3d 194 (2016) (quoting *State v. Hathaway*, 161 Wn. App. 634, 647, 251 P.3d 253 (2011)). In *Cornejo v. State*, 57 Wn. App. 314, 320-21, 788 P.2d 554 (1990), for example, Division Three of our court held that the trial court did not abuse its

discretion by refusing to give the "duty of seeing" instruction, which is "a specific application" of the general negligence instruction, because the aggrieved party could still "argue its theory under the general negligence instruction."

Here, the jury instructions were not misleading or incorrect and allowed UW to argue its theory of the case. The court instructed the jury, "The defendant's duty includes a duty to take reasonable steps to remove or correct hazardous conditions that make a road unsafe for ordinary travel including hazardous conditions that may exist along the road." One of UW's principal defense theories was that it "discharged its duty by adequately warning of any unreasonable hazard the speed bump created for cyclists." While WPI 140.01.01 does not expressly address that theory, the trial court stated—and Stocker's counsel agreed—that adequate warnings can constitute a corrective action. The trial court and Stocker's counsel also gave examples of such corrective action: "painting [the speed bump] a brighter color," "putting up appropriate signage," painting the speed bump white, and painting the word, "bump." As in *Pearson* and *Cornejo*, cited above, the trial court's "more general instruction" was sufficient because it "adequately explain[ed] the law and allow[ed] each party to argue its case theory." *Pearson*, 192 Wn. App. 821-22; *Cornejo*, 57 Wn. App. at 321-22. The trial court did not abuse its discretion (nor did it err) in declining to give UW's proposed instruction in addition to the more general duty of care instruction in WPI 14.01.01.

Moreover, not only did the trial court's instruction allow UW to argue its theory of the case, UW in fact did so. In closing arguments, UW explained that, after the initial construction of the speed bump, "there were four accidents that occurred pretty rapidly." UW then argued what it did to "correct" the hazard:

Then after that the University painted the speed bump white. The University then painted the warning bump 35 feet in front of the speed bump and painted arrows on the roadway. And then no other accidents occurred at that location for 13 months, not a single one, which would indicate to anyone running the facility that the problem had been fixed.

Since the "problem had been fixed," UW argued that Roger's injury resulted from his own fault:

And so the arrow is pointing to the bright white painted speed bump, and the warning sign that is on the pavement is bright white. And the question for you, as members of the jury, is that hidden in any way? Is that misleading in any way? It certainly isn't. It is clearly visible.
And so the question is whether Mr. Stocker had the capacity to know what to do.

The trial court's refusal to give UW's more specific instruction regarding corrective actions did not prevent UW from arguing this defense.

In arguing that the trial court abused its discretion, UW relies on *Meabon v. State*, 1 Wn. App. 824, 463 P.2d 789 (1970). That reliance is misplaced. In *Meabon*, the plaintiff sued the state for personal injuries suffered when the automobile in which she was a passenger left a state highway due to the slippery condition of the roadway. In discussing the duty of ordinary care, the court recognized, "Inherent in this duty of ordinary care is the alternative duty either to eliminate a hazardous condition, or to adequately warn the traveling public of its presence." *Id.* at 827-28 (citing *Provins v. Bevis*, 70 Wn.2d 131, 138, 422 P.2d 505 (1967)). While the court in *Meabon* concluded the trial court's failure to instruct the jury regarding "the adequacy of warning devices" was reversible error, it did not analyze, nor was it asked to analyze, whether the State could argue its theory of the case based on a more general instruction regarding the standard of ordinary

care.  Thus, the court in *Meabon* did not address the dispositive issue here and its analysis is therefore inapposite.

Affirmed.

_Feldman, J._

WE CONCUR:

_Bowman, J_          _Dwyer, J._