[No. 42971.    En Banc.    June 6, 1974.]

EDWIN HAMILTON *et al., Respondents,* v. STATE FARM
INSURANCE COMPANY, *Petitioner.*

*Skeel, McKelvy, Henke, Evenson & Betts* and *W. R. McKelvy, Alfred McBee,* and *R. L. Gemson,* for petitioner.

*Voris & Lipscomb* and *Michael C. Lipscomb* and *John Belcher,* for respondents.

ROSELLINI, J.—The petitioner, State Farm Mutual Insurance Company, issued a public liability policy to the respondents, in which its liability was limited to $10,000 for injuries to any one person. The policy provided, in part:

[The company will] defend any suit against the insured alleging such bodily injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; . . .

An action within the scope of the policy was commenced against the respondents by the legal representative of a 6-year-old boy who suffered serious injuries when a vehicle driven by the respondent Frances Hamilton struck him. He claimed damages in the amount of $100,000. The petitioner appointed an attorney, Frederick V. Betts, to defend the suit. The attorney offered $2,500 in settlement of the claim, being of the opinion that Frances Hamilton was not responsible for the accident. This offer was rejected by the plaintiff, who took the position that the minor's injuries were so serious and his medical expenses so great that any settlement less than the policy limits could not be considered. Both parties remaining adamant, no settlement was effected.

The trial of the action resulted in a verdict for the defendants. The plaintiff appealed and this court ordered a

new trial upon the ground that the jury had not been properly instructed on the law of contributory negligence as applied to a 6-year-old child. *Seholm v. Hamilton,* 69 Wn.2d 604, 419 P.2d 328 (1966). We held that after the sixth birthday has been reached and during the ensuing tender years, a child's capacity and his compliance with the standard of care required of a child of like age become questions of fact, and we said that the jury should have been instructed accordingly. We observed that the absence of such an instruction left the jury to speculate that the child was held to the same standard of care as an adult, and the verdict might have been reached upon a finding that the child had failed to exercise that degree of care for his own safety.

While the appeal was pending, the plaintiff offered to settle the case for $5,000. Upon the advice of the attorney, Mr. Betts, the petitioner refused to settle for this amount. After the new trial was ordered, the plaintiff offered again to settle, this time for $7,500, and again the offer was refused. A second trial resulted in a verdict for the plaintiff in the amount of $45,000.

Deciding not to appeal, the petitioner paid the plaintiff $10,000 plus costs. The attorney obtained from the respondents a document releasing State Farm from "any possible claim [they] might have against it on the basis of bad faith for not having settled the case prior to the second trial."[1]

This action was instituted by the Hamiltons to recover damages from the petitioner insurer in the amount of $35,000, which was the difference between the $45,000 judgment entered against them and the $10,000 which State Farm paid the plaintiff in the *Seholm* action. The jury returned a verdict in favor of the respondents. The petitioner appealed to the Court of Appeals, which, in a 2-to-1 decision, affirmed the judgment entered on the verdict. A petition for review addressed to this court was granted.

---

[1] The Court of Appeals held that this release was without consideration, and that holding has not been questioned upon this petition for review.

The Court of Appeals stated in its majority opinion that the controlling question in this case is whether the respondents were fairly represented by Betts in connection with the settlement negotiations. It was the position of the respondents that, had the attorney fairly represented their interests, he would have settled the case for either $5,000 prior to the hearing of the appeal or for $7,500 prior to the second trial. The trial court had instructed that negligence on the part of an attorney is the failure to exercise ordinary care and that when an insurance company voluntarily undertakes the defense of an alleged tort-feasor in pursuance of its privilege under a contract of insurance, it assumes a position of trust and confidence which calls for an exercise of the utmost good faith, particularly in view of the possible conflict of interest between the insurer and the insured. The court further instructed as follows:

> When an attorney is employed by an insurance company to represent the company and its insured in the defense of a claim such as that with which we are concerned here, the attorney and the insured acquire an attorney/client relationship in which the law requires that the lawyer conduct himself as if his client either (1) had no insurance or (2) as if the insurance policy has no limits.
>
> The "no limit" test affords the best means of determining whether the interests of the insurer and the insured have been given equal consideration.
>
> If the company through its attorney deviates from this standard and such deviation results in a loss to the insured, whether it be a result of negligence or bad faith, then that insurance company must respond in damages and compensate the insured for his loss.

The jury was instructed that the absence of "good faith" does not necessarily connote or imply dishonesty, misrepresentation, deceit or a species of fraud, but means that the defendant did not give equal weight to the plaintiff's interest.

Instruction No. 16 advised the jury that a lawyer employed by the insurer to represent the insured owes the insured undivided loyalty, and that where an insurer's at-

torney has reason to believe that the discharge of his duties to his client, the insured, will conflict with his duties to his employer, the insurer, it becomes incumbent upon him to terminate his relationship with the insured.

Another instruction read:

> An error in judgment made by the attorney defending the insurance company's insured in not settling a case within the policy limits is not, in itself, sufficient to prove bad faith or negligence. Also, the mere fact that the insurance company was unsuccessful in the trial of a case does not in itself show that the defense was made not in good faith. While an attorney is held to the exercise of ordinary care in the application of his skill and knowledge to the particular case he is handling, including the question of evaluating and in determining whether or not the case should be settled or litigated, he is not endowed with or expected to have the gift of prophecy so as to be able to predict what the verdict of a jury will be in a personal injury suit.

The jury was further instructed:

> Under a liability insurance policy, the insurer has no absolute duty under any and all circumstances whatever to settle the claims made against those whom it insures.
>
> An insurer is not required to settle claims rather than litigate them if reasonably and in good faith the insurer believes that a bona fide issue of liability or damages exists.

█ We have recognized that, with great unanimity, the cases hold that an insurance company which has paid a judgment against its insured to the extent of its liability under the policy of insurance, may be held liable for damages to its insured for a failure to adjust or compromise a claim within the limits of liability, if that failure is attributable to negligence or bad faith. *Murray v. Mossman,* 56 Wn.2d 909, 355 P.2d 985 (1960). *And see Bowker v. McDonald,* 49 Wn.2d 633, 305 P.2d 800 (1957). *See also Burnham v. Commercial Cas. Ins. Co.,* 10 Wn.2d 624, 117 P.2d 644 (1941), where we said that if investigation of the circumstances and facts surrounding an accident disclose liability on the part of the insured, it is the affirmative duty of

the insurer to make a good faith attempt to effect settlement.

As has been observed in 7A J. Appleman, *Insurance Law and Practice* § 4712 (Cum. Supp. 1974), the terms "bad faith" and "negligence" are actually interchangeable, but the terminology means little. It is the factual situation which is significant, in light of the duty which exists, and in the ordinary case the trier of fact must make the determination of liability and nonliability. The same conclusion is reached in 14 *Couch on Insurance 2d* § 51:7 (R. Anderson 1965), where it is said:

> Because of the difficulties involved in the definition of both good faith and due care in connection with the duty of an insurer to settle or compromise a claim against the insured, and because they are to some extent merely the two faces of the same coin, there is a tendency for the two concepts to be fused and to give rise to a joint or consolidated standard. Thus, in a large number of the more recent cases the two tests of "good faith" and "negligence" have tended to coalesce, with many of the courts which have in terms rejected the "negligence" test agreeing, nonetheless, that negligence is a relevant consideration in determining whether or not an insurer exercised the requisite good faith.

(Footnote omitted.) *See* Annot., *Duty of liability to insurer to settle or compromise,* 40 A.L.R.2d 168 (1955). *See also* J. Brodsky, *Duty of Attorney Appointed by Liability Insurance Company,* 14 Clev.-Mar. L. Rev. 375 (1965).

The petitioner does not question the propriety of this rule of liability but maintains here, as it did in the Court of Appeals, that the evidence conclusively showed that its attorney did not act in bad faith or negligently in refusing to offer more than $2,500 in settlement.

As the petitioner asserts, there is no contention in this action that the attorney Betts did not prepare for and conduct the two trials and the first appeal with skill and resourcefulness. The contention of the respondents was not that he was negligent in the preparation and trial of the case but that he negligently or in bad faith refused to

recommend settlement. The petitioner insists that because the first trial resulted in a defense verdict, because the respondent driver maintained throughout that she was not at fault in the accident, and because at the second trial the defendants would have the "advantage" of a contributory negligence instruction, it was justified in refusing to consider any settlement in excess of $2,500, its attorney being of the opinion that there was only a 25 percent chance of an unfavorable verdict.

We do not understand it to have been the position of the respondents that the attorney was negligent in refusing to settle for the full amount of the policy prior to the first trial. Rather its position, as we perceive it, is that two reasonable offers of settlement were made after that trial and both were rejected by the attorney without giving fair consideration to the risk of a verdict substantially in excess of the policy limits. We think the Court of Appeals was correct in holding that the jury was entitled to find upon the evidence that the attorney did not take into account the seriousness of the injuries suffered by the minor plaintiff or realistically evaluate the possibility of a verdict in the plaintiff's behalf, and did not give fair consideration to the almost certain prospect that if such a verdict were returned, it would be far in excess of the policy limits.

The petitioner maintains that its attorney was justified in feeling confident that a second trial would result in a verdict for the defendants. It says that he approached this trial with "a new string to his bow"—a contributory negligence instruction. In taking this position, however, the petitioner overlooks the fact that a new trial was granted at the request of the plaintiff. Implicit in the reversal was a finding that the plaintiff was prejudiced by the failure to give the contributory negligence instruction under the particular facts of the case, even though that instruction was one requested by the defendants. Obviously this court would not have granted a new trial if it had thought that the verdict would unquestionably have been the same had the contributory negligence instructions been given. Thus the

attorney must have realized that this court found in the record evidence upon which a verdict in favor of the plaintiff could be supported. He could not justifiably assume that there was only a 25 percent risk of a plaintiff's verdict. And he could not refuse or fail to take into account the enormous risk to the defendants if such a verdict should be returned.

The petitioner does not question the appropriateness of the "no limit" instruction given by the trial court. While this court has not heretofore expressly approved the no limit test, it is in harmony with the duty of an insured's attorney as we have heretofore defined that duty. The test was adopted in an excellent opinion of Division One, Panel 2 of the Court of Appeals, *Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 179, 473 P.2d 193 (1970). As that court stated, citing *Abernathy v. Utica Mut. Ins. Co.*, 373 F.2d 565 (4th Cir. 1967):

> The flat refusal to negotiate, under circumstances of substantial exposure to liability, a demonstrated receptive climate for settlement, and limited insurance coverage may show lack of good faith as well.

The question of the attorney's good faith or negligence in refusing to settle for one of the amounts within the policy limits which the plaintiff indicated would be acceptable, or to offer more than $2,500 in settlement, was properly submitted to the jury; and the Court of Appeals was correct in so holding.

It is next contended that the giving of instruction No. 16 was prejudicial error and that the Court of Appeals should have so held.

The petitioner had excepted to the giving of this instruction upon the ground that there was no evidence to support it. This theory was not argued on appeal. Instead the petitioner took the position in its brief that its attorney had no right under the insurance contract to terminate the relationship. The brief cites no authority for this theory and no legal argument is made in support of it.

■■ The general rule is that a challenged instruction will not be reviewed when the ground of error is urged for the first time on appeal. *Moore v. Mayfair Tavern, Inc.,* 75 Wn.2d 401, 451 P.2d 669 (1969); *Owens v. Anderson,* 58 Wn.2d 448, 364 P.2d 14 (1961); and *Sigurdson v. Seattle,* 48 Wn.2d 155, 292 P.2d 214 (1956). It is also the rule that the assignments of error unsupported by citation of authority or legal argument will not be considered. *In re Cassel,* 63 Wn.2d 751, 388 P.2d 952 (1964).

The Court of Appeals was correct in holding that this assignment of error was not properly before it.

Defendants' proposed instruction No. 9 read:

> An insurer is under a duty to keep an insured reasonably informed of the course of the litigation which it is defending for him, including the progress it has made in locating and interviewing witnesses and the nature of the settlement negotiations in which it has been involved. An insurer's duty to keep the insured informed applies only to reasonably material and significant matters.

■ With regard to this assignment of error, also, the petitioner neglected to cite any authority supporting its proposed instruction. The trial court probably recognized that, while the general principle stated in it was correct, the instruction was so worded as to mislead the jury. In mentioning as "included" certain matters which were not very material to the respondents' cause of action and omitting any mention of those additional matters which the respondents contended the attorney had a duty to inform them about, the instruction was calculated to give the jury the impression that disclosure of those matters, including the amount of any settlement offer, was, as a matter of law, not required. The jury could also infer from this instruction, as worded, that the attorney had no duty to advise the client of the risk involved if the case went to the jury or the advisability of settlement. The trial court probably viewed this proposed instruction as a comment on the evidence, and, in the absence of any showing that this court or any other court has approved the giving of an instruction

worded as this one was, we are not inclined to say that the court committed prejudicial error in refusing it.

The decision of the Court of Appeals is affirmed.

HALE, C.J., and FINLEY, HUNTER and BRACHTENBACH, JJ., concur.

STAFFORD, J. (dissenting)—Petitioner has argued the prejudicial nature of instruction 16 given by the trial court as well as the error committed by its failure to give petitioner's proposed instruction 9. A careful review of the record reveals that proper use of these two instructions was absolutely basic to the jury's consideration of the issues. I cannot agree with the majority's rejection of petitioner's arguments.

Rather than lengthen this dissent unduly, I shall adopt, in full, the dissent written by Judge Horowitz in *Hamilton v. State Farm Mut. Auto. Ins. Co.,* 9 Wn. App. 180, 188-201, 511 P.2d 1020 (1973). Judge Horowitz' well reasoned dissent discusses fully the prejudicial effect of instruction 16 and the prejudicial impact of the trial court's refusal to give petitioner's proposed instruction 9.

I would reverse the Court of Appeals.

WRIGHT and UTTER, JJ., and SOULE, J. Pro Tem., concur with STAFFORD, J.

Petition for rehearing denied August 1, 1974.