# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JEFFREY B. WEISERT, | No. 58320-8-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| PATRICIA B. WEISERT, | |
| Respondent. | |

CHE, J. — Jeffrey Weisert appeals a summary judgment in Patricia Weisert's favor. Jeffrey asserted that Patricia fraudulently conveyed his real property to herself in 2007. Jeffrey maintained that he did not knowingly sign the relevant quitclaim deed and emphasized that the notary acknowledgment bore a different date than the deed itself. Patricia moved for summary judgment and produced a forensic document examiner report concluding that Jeffrey's signature was genuine. The trial court granted summary judgment. And Jeffrey appeals arguing that there was a genuine issue of material fact.

We affirm.

## FACTS

Patricia and Jeffrey were married. The marriage was dissolved in 2005. The dissolution decree awarded Jeffrey various pieces of real property in Kitsap County, including the one that is presently at issue.

In 2007, a quitclaim deed was executed, bearing Jeffrey's signature, granting the challenged property to Patricia. The quitclaim deed states that it was made on January 3, 2007. But in the notary acknowledgement section, the 3 in January 3 is crossed out and 6 is penned in. The acknowledgment states that Jeffrey appeared before a notary on January 6 to sign the deed.

In June 2019, Patricia entered into a purchase and sale agreement to sell the contested property. Jeffrey sent Patricia texts demanding a check for his half of the property.

Later that month, Jeffrey brought a quiet title lawsuit against Patricia for the property and filed a lis pendens. Jeffrey alleged in the complaint that "Patricia Weisert fraudulently transferred into her name, without the consent or signature of Jeffrey Weisert, the real property described above." Clerk's Papers (CP) at 4. Shortly thereafter, Jeffrey's counsel withdrew. Patricia's potential buyer withdrew from the sale.

Patricia moved for summary judgment. In an attached declaration, Patricia maintained that Jeffrey transferred the property to her because he owed her child support payments. Patricia also submitted a forensic document examiner report concluding that Jeffrey's signature on the contested deed shows no signs of forgery and is consistent with Jeffrey's other signatures. In a later declaration, Patricia maintained that Jeffrey owed around $29,000 on the deeded property and clarified that Jeffrey was having trouble making child support payments—not that he owed child support payments.

A new attorney filed a notice of appearance on behalf of Jeffrey. That attorney maintained that he was attempting to contact the notary from the 2007 deed to ascertain her recollection of the events.

Jeffrey produced a declaration opposing summary judgment where he alleged that he did not owe Patricia child support at the time of the transfer, that he did not knowingly sign the quitclaim deed at issue, and that he did not know the notary or appear before her.[1] Jeffrey attached another quitclaim deed to the declaration regarding the same transaction—notarized on January 3; he asserts that this deed was the first attempt by Patricia to fraudulently convey the property to herself and he did not sign this deed. In a later declaration, Jeffrey again stated that he "never knowingly signed" the deed notarized on January 6. CP at 124. To that end, Jeffrey alleged, "[Patricia] often presented papers for me to sign and we did not have separate money on these projects. I trusted the Defendant and signed numerous papers she put in front of me without question." CP at 125.

At Patricia's deposition, Patricia stated that she prepared the contested deed on January 3, and then Jeffrey signed the deed in front of the notary on January 6. Patricia explained that Jeffrey deeded her the property because of debt for an equity line of credit, not child support. As to the quitclaim deed notarized on January 3 that Jeffrey attached to his declaration, Patricia maintained that she filled out the legal description erroneously and had to make another deed— the deed notarized on January 6. Jeffrey maintained that he never owed Patricia money for a line of credit and, more generally, that he owed her nothing.

The trial court granted Patricia's motion for summary judgment. Jeffrey moved for reconsideration, which the trial court denied. Jeffrey appeals.

---

[1] In this declaration, Jeffrey alleged that Patricia told him she was afraid documents she falsified would come to light, and so, she did not want to pursue child support enforcement.

No. 58320-8-II

ANALYSIS

## I. LEGAL PRINCIPLES

We review grants of summary judgment de novo. *M.E. v. City of Tacoma*, 15 Wn. App. 2d 21, 31, 471 P.3d 950 (2020), *review denied*, 196 Wn.2d 1035 (2021). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

On summary judgment, the moving party bears the initial burden to show there is no genuine issue of material fact. *M.E.*, 15 Wn. App. 2d at 31. The burden then moves to the nonmoving party to show specific facts creating a genuine issue of material fact. *Id.* But the nonmoving party cannot meet this burden by relying on mere speculation. *Id.* at 31-32.

## II. GENUINE ISSUE OF MATERIAL FACT

It appears that the general nature of Jeffrey's appeal is that the trial court erred in granting summary judgment because there was a genuine issue of material fact. To that end, it appears that Jeffrey makes a number of supporting arguments including (1) Patricia failed to meet her initial burden that no genuine issue of material fact existed, (2) there is a genuine issue of material fact about whether the contested deed was fraudulent, and (3) there is a genuine issue of material fact about whether the deed is facially valid. We disagree.

A. *Fraud*

"A deed is defective if it is forged or executed as the result of fraud, duress, or undue influence." 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASH. PRACTICE, REAL ESTATE § 7.10 (2d ed. 2023).

4

In *Larson v. Snohomish County*, mortgagors alleged their signature on a promissory note was forged. 20 Wn. App. 2d 243, 274, 499 P.3d 957 (2021), *review denied*, 199 Wn.2d 1016 (2022), *cert. denied* 143 S. Ct. 575 (2023). But one of the mortgagors, the one whose signature appeared on the promissory note, did not testify that his signature was forged. *Id*. at 275. In contrast, the moving party presented the promissory note bearing the mortgagor's signature and copies of the deed of trust bearing both mortgagors' notarized signatures. *Id*. Division One determined that there was no genuine issue of material fact regarding the authenticity of the note under these circumstances. *Id*. at 276.

Jeffrey's original claim appears to be that the deed was fraudulent because it did not bear his signature and was created without his consent. This appears to be a fraud by forgery claim as Jeffrey did not brief duress or undue influence.

In support of Patricia's motion for summary judgment, she produced the deed bearing Jeffrey's signature, which was notarized, and a forensic document examiner report concluding that Jeffrey's signature on the contested deed shows no signs of forgery and is consistent with Jeffrey's other signatures. This was sufficient to meet Patricia's initial burden to show that there was no genuine issue of material fact.

The burden shifted to Jeffrey to show specific facts creating a genuine issue of material fact for trial. Like in *Larson*, Jeffrey did not declare that his signature was forged. Instead, Jeffrey alleged that he "never knowingly signed" the deed. CP at 124. Such testimony is insufficient to show a genuine issue of material fact regarding forgery.

Jeffrey also alleged, "[s]he often presented papers for me to sign and we did not have separate money on these projects. I trusted the Defendant and signed numerous papers she put in

5

front of me without question." CP at 125. Jeffrey emphasized below and on appeal that there was no consideration for the property transfer.

On appeal, it is unclear if Jeffrey's position is that Patricia engaged in fraud based on the fact that he did not knowingly sign the documents in combination with the alleged lack of consideration. To the extent that Jeffrey is attempting to make such an argument, he does not provide authority for this contention as required by RAP 10.3(a)(6).[2] Thus, we decline to reach the issue, to the extent it is raised, as it is not supported by cogent argument. *Ameriquest Mortg. Co. v. Att'y Gen.*, 148 Wn. App. 145, 166, 199 P.3d 468 (2009), *aff'd on other grounds*, 170 Wn.2d 418 (2010).

B.      *Facial Validity of the Deed*

Jeffrey appears to argue that there is a genuine issue of material fact regarding the facial validity of the deed because (1) the deed states it was made on January 3 but notarized on January 6, and (2) that legal delivery did not occur. Patricia argues that we should not review this claim because the argument that the deed is facially invalid was not a pleaded cause of action.

"[T]he complaint . . . must adequately inform the defendant of the nature of the plaintiff's claims as well as the legal grounds upon which those claims rest." *Reagan v. Newton*, 7 Wn. App. 2d 781, 801, 436 P.3d 411 (2019). Plaintiffs may not allege only a factual basis in the complaint, leaving open the pleading of any legal theory. *Id.*

---

[2] We do note that Jeffrey cites one case—*Peters v. Skalman*, 27 Wn. App. 247, 255, 617 P.2d 448 (1980)—for the contention that lack of consideration is relevant to fraud claims. But that case deals with undue influence, a form of fraud, which has not been developed here. And more generally, that case does not state that lack of consideration is broadly relevant to any fraud claim.

Here, Jeffrey alleged in the complaint that "Patricia Weisert fraudulently transferred into her name, without the consent or signature of Jeffrey Weisert, the real property described above." CP at 4. The complaint did not notify the responding party that there is a facially invalidity claim. Rather, the complaint generically raised a fraud claim.

But CR 15(b) states, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." "In determining whether the parties impliedly tried an issue, we consider the record as a whole, including whether the issue was mentioned before trial, and the legal and factual support for the trial court's conclusions regarding the issue." *Reagan*, 7 Wn. App. 2d at 802. Finessing a new theory into the trial briefs is not sufficient to constitute impliedly trying the issue. *Id.*

In Jeffrey's response to summary judgment, he argued that the deed is ineffective due to failure to comply with the statutory requirements. Jeffrey specifically argued that the defective acknowledgment issue invalidates the deed. In response, Patricia pointed out that Jeffrey has functionally raised a new cause of action from the initial fraud claim, and she responded to the defective acknowledgment issue through a fraud lens. In any event, Patricia responded to the defective acknowledgment argument. And in reply, Jeffrey also raised the legal delivery issue, which Patricia responded to on the merits.

Assuming, without deciding, that CR 15(b) applies to summary judgment and that this is sufficient to constitute implied consent to review the issue, Jeffrey's facial invalidity argument fails.

7

"Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds." RCW 64.04.020. Deeds may be acknowledged by a qualified notary public. RCW 64.08.010. But defective acknowledgment of the deed does not render the deed invalid. *Peoples Nat'l Bank of Wash. v. Ostrander*, 6 Wn. App. 28, 33-34, 491 P.2d 1058 (1971).

Additionally, for a deed to be operative, there must be legal delivery. *Estate of O'Brien v. Robinson*, 109 Wn.2d 913, 918, 749 P.2d 154 (1988). "'Delivery' of a deed is ultimately the grantor's intent that it shall be effective to transfer an interest in land: 'delivery' means 'intent.'" 17 STOEBUCK & WEAVER, *supra,* § 7.11. If the grantee possesses a properly executed deed, there is strong presumption of legal delivery, which can be overcome by the challenging party only with clear and convincing evidence. *In re Pappuleas' Estate*, 5 Wn. App. 826, 828, 490 P.2d 1340 (1971). Additionally, "recording alone is prima facie evidence of the delivery of a deed." *Brewer v. Rosenbaum*, 183 Wash. 218, 222, 48 Pac. 2d 566 (1935).

Here, even assuming that the acknowledgment is defective due to the date mismatch, it does not render the deed inoperative. Next, Jeffrey appears to assign error to the summary judgment based on lack of evidence of legal delivery. But Jeffrey does not develop this argument. And "assignments of error unsupported by citation of authority or legal argument will not be considered." *Hamilton v. State Farm Ins. Co.*, 83 Wn.2d 787, 795, 523 P.2d 193 (1974). As such, we decline to consider this assignment of error as there is no meaningful argument to support it.

No. 58320-8-II

C.    *Additional Discovery Time*

In his reply brief, Jeffrey argues that summary judgment was inappropriate because he did not have ample time to conduct discovery. Jeffrey does not provide authority to support this contention. Moreover, this issue was also not meaningfully briefed in the initial appellant brief.

As such, we decline to review this issue both because the appellant brief lacked meaningful argument and citation to authority under RAP 10.3(a)(6) and because the issue was only meaningfully raised for the first time in a reply brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

## CONCLUSION

We affirm the grant of summary judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, C.J.

Cruser, J.

9